UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

HAYES PUMP, INC.,

                Plaintiff,

          v.

KORDUN CONSTRUCTION CORP.
and MILENA TURKALJ,

                Defendants.

———————————————————

**DECISION AND ORDER**

6:24-CV-06627 EAW

## INTRODUCTION

Plaintiff Hayes Pump, Inc. ("Plaintiff" or "Hayes") brings this action against defendants Kordun Construction Corp. ("Kordun") and Milena Turkalj ("Turkalj") (collectively, "Defendants"), alleging breach of contract and related claims stemming from the alleged nonpayment of $181,870.20, from Plaintiff's 2021 sale of motorized pumps and expansion tanks to Kordun on credit. (Dkt. 1). Pending before the Court are Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Dkt. 20), and Plaintiff's cross-motion for summary judgment (Dkt. 22).

For the following reasons, the Court grants the motion to transfer venue, defers ruling on the motion for summary judgment, and directs that the matter be transferred to the United States District Court for the Eastern District of New York.

## BACKGROUND

The following background information is taken from the complaint, the answer and counterclaims to the complaint, and from materials submitted in connection with the

motion to transfer venue.  Plaintiff is a multi-state distributor of industrial, commercial, and municipal pumps and other associated products, and is a foreign corporation incorporated, organized, and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business at 66 Old Powder Mill Rd., West Concord, Massachusetts, 01742.  (Dkt. 1 at ¶¶ 2-3).  Plaintiff has business office locations in Massachusetts, New Jersey, and Maine.  (Dkt. 20-1 at ¶ 4).

Kordun is a construction company whose work includes heating, ventilation, air conditioning, utilities, liquid handling, and liquid purification, and is a domestic corporation incorporated, organized, and existing under the laws of the State of New York, with its principal place of business at 69-41 76th Street, Middle Village, New York, 11379. (Dkt. 1 at ¶¶ 4-5).  Turkalj is a Vice President of Kordun and is a New York domiciliary, currently residing at 37 Hill Lane, Roslyn Heights, New York, 11577.  (*Id*. at ¶¶ 6-7).  The complaint alleges that New York courts have general personal jurisdiction over Kordun and Turkalj, because both defendants are substantially at home in New York, Kordun's principal place of business is within the State and it solely or overwhelmingly transacts business within the State, and because Turkalj is a New York domiciliary.  (*Id*. at ¶ 9).

On May 29, 2020, Kordun and Hayes entered into a credit agreement, signed by Turkalj as personal guarantor.  (*Id*. at ¶¶ 13-14).  Pursuant to the credit agreement, Kordun sent to Hayes a purchase order for six motorized pumps and five expansion tanks.  (*Id*. at ¶ 15).  Kordun's procurement of the pumps and tanks related to a real property improvement project, located in Brooklyn, New York, and administered by the New York City Housing Authority ("NYCHA").  (Dkt. 20-1 at ¶ 7).  Kordun served as a subcontractor

on the construction project, also known as the "Red Hook Houses – East and West Project," which were improvements made to two connected public housing complexes in Brooklyn, managed by the NYCHA.  (Dkt. 22 at ¶ 4).  Kordun was retained by non-party Adam's European Contracting Inc. ("AECI"); AECI is also based in Brooklyn, New York, and acted as the project's general contractor.  (Dkt. 20-1 at ¶¶ 9-10; *see also* Dkt. 27-2 at ¶ 3).  Kordun employee Miguel Medina served as project manager on the construction project.  (*See* Dkt. 27-3 at ¶ 3).

Plaintiff alleges that Kordun's purchase order totaled $512,140, and on August 8, 2021, Joseph Larkin, Hayes' Executive Vice President, accepted Kordun's offer by signing Kordun's purchase order.  (Dkt. 1 at ¶¶ 16-17).  Plaintiff further alleges that it shipped to Kordun all the goods contemplated by the purchase order, that Kordun accepted them and made partial payments, but Kordun only paid $310,767.80, with an outstanding balance of $181,872.20.  (*Id*. at ¶¶ 18-21).

According to Defendants, the $512,140 figure was listed on a revised purchase order that was not signed by Kordun, and the original purchase order, which listed $310,767.80 as the purchase price, controls.  (*See* Dkt. 27; *see also* Dkt. 20-1 at ¶¶ 11-14).  Specifically, Defendants contend that on or about May 21, 2020, Kordun accepted a written proposal from Plaintiff and issued a purchase order for $327,124, to Plaintiff for the supply of equipment and related services for the project.  (Dkt. 20-1 at ¶ 11; *see also* Dkt. 10).  Plaintiff later requested to increase the equipment sale price due to alleged supply chain issues reported by Plaintiff's non-party supplier, and requested a new purchase order for $512,140, to support a price escalation claim to AECI and NYCHA.  (Dkt. 20-1 at ¶ 12).

- 3 -

Kordun submitted a price escalation claim on Plaintiff's behalf to AECI an NYCHA, but it was denied. (*Id*. at ¶ 13). Kordun paid Plaintiff the agreed sale price under the original purchase order, but Plaintiff insisted on additional payment and did not furnish the required startup and repair services or warranty work for the equipment, which Kordun procured elsewhere at an additional expense. (*Id*. at ¶ 14). Defendants assert that the majority of witnesses in the case, including Turkalj, Kordun's employees and principals, and employees of non-parties NYCHA and AECI, are located in the New York City area. (*Id*. at ¶ 25).

## **PROCEDURAL HISTORY**

Plaintiff filed its complaint on October 24, 2024, asserting five causes of action against Defendants, including: (1) breach of contract against Kordun; (2) account stated against Kordun; (3) unjust enrichment against Kordun; (4) quantum meruit against Kordun; and (5) personal guarantee against Turkalj. (Dkt. 1). Plaintiff also seeks payment of its attorneys' fees under the May 2020 Credit Agreement. (*Id*.). Defendants filed their answer with counterclaims on February 7, 2025, including breach of contract and breach of warranty. (Dkt. 10). Plaintiff filed its answer to the counterclaims on February 27, 2025. (Dkt. 13). The case was referred to the Honorable Colleen D. Holland, United States Magistrate Judge, for supervision of discovery. (Dkt. 11). The parties engaged in mediation efforts, but they were unsuccessful. (*See* Dkt. 19).

On September 15, 2025, Defendants filed a motion to transfer venue to the Eastern District of New York. (Dkt. 20). Plaintiff filed its opposition to the motion to transfer venue and a cross-motion for summary judgment on October 7, 2025. (Dkt. 22).

Defendants filed their reply in further support of their motion to transfer venue, and an opposition to Plaintiff's motion for summary judgment, on November 19, 2025. (Dkt. 27). On December 5, 2025, Plaintiff filed a reply in further support of its motion for summary judgment, wherein it also made further arguments in opposition to Defendants' motion to transfer venue. (Dkt. 28).

## DISCUSSION

### I.  Defendants' Motion to Transfer Venue (Dkt. 20)

#### A.  The Parties' Arguments

Defendants move to transfer venue pursuant to 28 U.S.C. § 1404(a), which states: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Defendants argue that the relevant factors support transfer of the case to the Eastern District of New York, including principally because the Eastern District of New York is the locus of the operative facts, and it is also the most convenient venue for the witnesses and the parties, whereas the case has no connection to the Western District of New York, other than that Plaintiff's attorneys are located there. (*See* Dkt. 20-4 at 5, 9-12).

Plaintiff submitted a brief response, arguing that "a party waives any defense listed in Rule 12(b)(2) – 12(b)(5) by failing to include those defenses in either a motion attacking [the] complaint or in its pleading responding to the claim." (Dkt. 22-6 at 9). Plaintiff argues that Defendants waived any objections to venue, and in fact Defendants affirmatively pleaded that venue in the Western District of New York is proper. (*Id*.).

Plaintiff cites case law supporting the proposition that an improper venue defense is waived when the moving party fails to file a motion attacking the complaint or raising any such defense in its answer. (*Id*.).

In their reply papers, Defendants argue that Plaintiff misapprehends the venue motion. Defendants' argument is not that venue is improper; rather, their position is that the Eastern District of New York is a more convenient venue, and transferring the action there would serve the interests of justice. (Dkt. 27 at 8). Accordingly, Plaintiff's references to improper venue and waiver are not relevant, and the proper analysis is under 28 U.S.C. § 1404(a), which governs the transfer of venue for the convenience of the parties and witnesses, and in the interests of justice, and any such motion can be made at any time in the case.[1] (*Id*. at 7-8). Defendants contend that Plaintiff effectively concedes the arguments advanced in Defendants' venue motion, and therefore the motion should be granted. (*Id*. at 8-9 (citing *Miles v. Lewis Tree Serv.*, No. 6:25-CV-06042 EAW, 2025 WL 2549716, at *4 (W.D.N.Y. Sept. 4, 2025) (concluding that the plaintiff's failure to respond to portion of the defendants' venue motion "operates as a concession to the relief sought and alone justifies granting the motion"))).

---

[1] "While motions to transfer are typically considered at an early stage in a case, and venue objections are waived if not timely asserted . . . nothing bars a court from granting a motion to transfer venue at a later stage in a case." *Jones v. Walgreen Co*., 463 F. Supp. 2d 267, 271 (D. Conn. 2006) (alteration, quotations, and citations omitted); *see also Lencco Racing Co., Inc. v. Arctco, Inc.,* 953 F. Supp. 69, 70 n.1 (W.D.N.Y.1997) (explaining that a "12(b)(3) motion to dismiss for improper venue, which must be filed before the answer, is not the same as a motion to transfer venue, pursuant to 28 U.S.C. § 1404(a)," and "[a] motion to transfer venue may be made at any time").

In its reply papers in further support of its cross-motion for summary judgment[2], Plaintiff contends that venue should remain in the Western District of New York, arguing generally that the Second Circuit has held that courts should give deference to a plaintiff's choice of forum. (Dkt. 28 at 2-3). Plaintiff also argues that Defendants have not identified a list of probable witnesses or any statement of what their testimony will cover, a transfer of venue is not favored where it would merely shift any inconvenience from defendant to plaintiff, and the location of documents is not a compelling consideration when records are easily portable. (*Id.* at 2-5). Plaintiff concedes that the locus of operative facts favors transfer of the case, but that "all the other relevant factors weigh in favor of maintaining venue in [the Western District of New York], or they are neutral." (*Id*. at 6).

## B.    Legal Standard

A federal action premised upon diversity jurisdiction is governed by the venue rules set forth in 28 U.S.C. § 1391. *Kirkpatrick v. Rays Grp.*, 71 F. Supp. 2d 204, 211 (W.D.N.Y. 1999). 28 U.S.C. § 1391 provides, in relevant part:

A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

---

[2]    Plaintiff's further argument in opposition to the motion to transfer venue, which was made in its reply in further support of its own motion for summary judgment, is arguably an unauthorized sur-reply to the venue motion, for which Plaintiff did not seek leave of Court to file. *See* L. R. Civ. P. 7(a)(6) ("Absent permission of the Judge hearing the motion, sur-reply papers are not permitted."). Despite Plaintiff's failure to comply with the Local Rule, the Court will consider the arguments advanced by Plaintiff in this filing.

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  "The [Second] [C]ircuit has cautioned district courts to 'take seriously the adjective "substantial,"' explaining that venue is proper only if '*significant* events or omissions *material* to the plaintiff's claim' occurred in the chosen district." *Micromem Techs., Inc. v. Dreifus Assocs. Ltd.*, No. 14-CV-9145 (LAK), 2015 WL 8375190, at *4 (S.D.N.Y. Dec. 8, 2015) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphases in original)).  Venue can be proper in more than one district "as long as 'a substantial part' of the underlying events took place in those districts." *Glasbrenner*, 417 F.3d at 356.  Courts are "required to construe the venue statute strictly." *Id.* at 357 (citing *Olberding v. Ill. Cent. R.R. Co.*, 346 U.S. 338, 340 (1953)).

A motion to transfer venue pursuant to § 1404 "requires a two-part inquiry: first, 'whether the action to be transferred "might have been brought" in the transferee court'; and second, whether 'considering the "convenience of parties and witnesses," and the "interest of justice," a transfer is appropriate.'" *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (quoting *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998)).  The moving party carries the "burden of making out a strong case for transfer." *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989) (quotations and citation omitted).  In other words, a district court will only exercise its discretion to grant a motion to change venue under § 1404(a) if the moving party establishes that a transfer is appropriate by "clear and

- 8 -

convincing evidence." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010).

When determining whether a transfer is in the interest of justice, the Court considers:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*E. Coast Plastic Surgery, P.C. v. Aetna Health & Life Ins. Co.*, No. 22-CV-5820 (EK)(CLP), 2025 WL 2042529, at *1 (E.D.N.Y. July 21, 2025) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006)); *see also Fuji Photo Film Co., Ltd.*, 415 F. Supp. 2d at 373 (also considering the forum's familiarity with the governing law and trial efficiency).

Plaintiff does not dispute that the action might have been brought in the Eastern District of New York. Kordun and Turkalj are residents of the Eastern District of New York, and a substantial part of the events forming the basis for the claim occurred in the Eastern District of New York. In other words, the Eastern District of New York would have personal jurisdiction over the case, had Plaintiff commenced its action in that district. Accordingly, the Court need only address the second part of the § 1404 test: whether transfer to the Eastern District of New York would be appropriate, considering the convenience of parties and witnesses and the interests of justice. The Court examines each factor in turn.

C.    **The Factors Weigh in Favor of Transfer to the Eastern District of New York.**

1.    **Plaintiff's Choice of Forum**

"A plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001). "[T]he plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim, or where the plaintiff is a resident of the forum district." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998) (citation omitted). However, this factor is diminished if "the operative facts upon which the litigation is brought bear little material connection to the chosen forum." *Nieves v. Am. Airlines*, 700 F. Supp. 769, 772 (S.D.N.Y. 1988).

Here, there is no material connection or significant contact between the Western District of New York and the events allegedly underlying the claims—and in fact, the Court cannot discern *any* connection or contact, let alone a material or significant one. Further, Plaintiff is not a resident of the Western District of New York. Accordingly, Plaintiff's argument that courts in the Second Circuit have held that courts should give deference to a plaintiff's choice of forum (*see* Dkt. 28 at 2-3), is not applicable. The only apparent connection between the case and the Western District of New York is that Plaintiff's chosen attorneys are located here—but "[t]he location of counsel . . . is not afforded substantial consideration when considering a motion to transfer venue." *Glass v. S&M NuTec, LLC*, 456 F. Supp. 2d 498, 502 (S.D.N.Y. 2006). Accordingly, while the Court

considers Plaintiff's choice of forum in the Western District of New York as part of the analysis, the Court does not give it significant weight.

### 2.    The Convenience of the Witnesses

"Convenience of the witnesses is perhaps the most important consideration in determining whether transfer is appropriate." *Adirondack Transit Lines, Inc. v. Greyhound Lines, Inc.*, No. 1:15-CV-01227 (LEK)(CFH), 2016 WL 5415772, at *5 (N.D.N.Y. Sept. 28, 2016). "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Royal & Sunalliance*, 167 F. Supp. 2d at 577. "The convenience of non-party witnesses is accorded more weight than that of party witnesses." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005).

To carry its burden on this factor, a defendant "must provide the Court with a list of probable witnesses who will be inconvenienced by the current forum and a general statement of what the witnesses' testimony will cover." *Savoy Owners Assocs., Inc. v. Ins. Corp. of N.Y.*, No. 02 Civ. 6145 (JFK), 2003 WL 941098, at *2 (S.D.N.Y. Mar. 6, 2003). However, in cases such as this one, "where discovery has not been conducted, a party will not be held to the requirement of stating with precision each witness and document," and "courts are permitted to determine the logical location of the witnesses based upon an examination of the record." *Sepanski v. Janiking, Inc.*, 822 F. Supp. 2d 309, 318 (W.D.N.Y. 2011) (quotation and citation omitted); *see also Carr-Stock v. Orthotic Rehab. Prods., Inc.*, 832 F. Supp. 2d 229, 240 (W.D.N.Y. Nov. 27, 2011) (same).

Defendants have not specifically identified witnesses beyond Turkalj (who is located in the Eastern District[3]), but represent that they expect "most party and non-party witnesses" are located in the Eastern District of New York, including those witnesses affiliated with Kordun. (Dkt. 20-4 at 9). The Court notes that Defendants have submitted a declaration from Mr. Medina (Dkt. 27-3), Kordun's project manager, in opposition to Plaintiff's cross-motion for summary judgment, and presumably he would provide testimony in the case. Similarly, Plaintiff has submitted in support of its cross-motion for summary judgment the declaration of Tricia Mackenzie (*see* Dkt. 22), who serves as Plaintiff's vice president of customer service, and presumably she would provide testimony relevant to the case. Defendants further note that employees for non-parties NYCHA, the project owner, and AECI, the general contractor, are located in the Eastern District of New York or otherwise nearby, and they would likely provide testimony relevant to the case. (Dkt. 20-4 at 9-10). While the record may not reflect the exact location of some of these witnesses, none appear to be located in the Western District of New York.

Plaintiff has not identified any potential witnesses (*see* Dkt. 28)—but there is no basis to conclude that any would be located in the Western District of New York. Rather, Plaintiff attacks Defendants' failure to provide the Court with a list of probable witnesses, or a general statement of what their testimony would cover. (*Id*. at 4). However, discovery in this matter has not been completed (*see* Dkt. 20-1 at ¶ 22; *see also* Dkt. 29 (staying discovery pending resolution of the pending motions)), and therefore the Court does not

---

[3]    The complaint alleges that Turkalj resides in Roslyn Heights, New York (*see* Dkt. 1 at ¶ 6), which is located in Nassau County and is within the Eastern District of New York.

consider Defendants' failure to submit a list of witnesses with their expected testimony to be fatal to their motion.  Given that Defendants have identified several witnesses likely to be called, including non-party witnesses, who are located in the Eastern District of New York, the Court finds that this factor weighs in favor of transfer.

### 3. The Location of the Relevant Documents and the Accessibility of Proof

"The location of documents is 'not a compelling consideration when records are easily portable.'" *Flowserve Corp. v. BMCE, Inc.*, No. 05 Civ. 8075 (WHP), 2006 WL 2927176, at *4 (S.D.N.Y. Oct. 12, 2006) (quoting *Astor Holdings, Inc. v. Roski*, No. 01 Civ.1905 (GEL), 2002 WL 72936, at *12 (S.D.N.Y. Jan. 17, 2002)); *see Coker v. Bank of Am.*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997) ("In today's era of photocopying, fax machines and Federal Express, [the defendant]'s documents easily could be sent to New York, since not many documents are involved."). Given the advances of modern technology, a defendant "must make a convincing showing [it] will suffer any real hardship in moving documents to this District." *Guardian Life Ins. Co. of Am. v. Hernandez*, No. 11 Civ. 2114 (SAS), 2011 WL 3678134, at *3 (S.D.N.Y. Aug. 22, 2011).

Defendants concede in their moving papers that the location of documents does not weigh in favor of transfer and is neutral.  (Dkt. 20-4 at 13).  The Court agrees that this factor does not weigh either in favor of or against transfer of the case to the Eastern District of New York.

### 4.     Convenience of the Parties

"When analyzing the convenience to the parties, courts often look to the parties' principal places of business and the location of their offices." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 618 (S.D.N.Y. 2016). "The convenience of the parties does not favor transfer when it would merely shift any inconvenience from defendant to plaintiff." *Kiss My Face Corp. v. Bunting*, No. 02CIV2645 (RCC), 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003). However, "[t]he convenience of the parties weighs in favor of transfer when it would increase convenience for the movant without decreasing convenience for the non-movant." *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 468 (S.D.N.Y. 2020).

Here, Defendants are located in the Eastern District of New York[4], whereas Plaintiff is located in Massachusetts. (Dkt. 1 at ¶¶ 2-7). Plainly venue in the Eastern District of New York would be more convenient for Defendants, since they are located there. Plaintiff is not located in the Eastern District of New York, but it has advanced no argument as to why venue in the Western District of New York would be more convenient than venue in the Eastern District of New York. Although Plaintiff's counsel is located in the Western District of New York, as explained above, the location of counsel is not an appropriate consideration on a motion to transfer venue. And as noted by Defendants, travel to the Eastern District of New York may be easier for Plaintiff, since the Eastern District is closer

---

[4]     The complaint alleges that Kordun has its offices in Middle Village, New York (*see* Dkt. 1 at ¶ 4), which is located in the borough of Queens, within the Eastern District of New York.

to Massachusetts and is a major travel hub—facts which Plaintiff does not dispute in response to the motion. Rather, Plaintiff states in conclusory fashion that it has "clearly signaled its preference to litigate this action in this forum." (*See* Dkt. 28 at 4). In other words, it does not appear that moving venue to the Eastern District of New York decreases the convenience for Plaintiff, and therefore this factor weighs in favor of transfer.

### 5.    The Locus of Operative Facts

"Where there is no material connection between the district and the operative facts, . . . the interests of justice require the transfer of [the] action." *Manao Invs., Inc. v. Stouts Brunswick Assocs. Ltd. P'ship*, No. 96 CIV. 7100 (HB), 1997 WL 53200, at *2 (S.D.N.Y. Feb. 10, 1997). "To determine where the locus of operative facts lies, courts look to 'the site of events from which the claim arises.'" *Age Grp. Ltd. v. Regal Logistics, Corp.*, No. 06 Civ. 4328 (PKL), 2007 WL 2274024, at *3 (S.D.N.Y. Aug. 8, 2007) (quoting *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1994)). "In an action arising out of a contract, the location of the operative facts is 'where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'" *Eres N.V. v. Citgo Asphalt Refining Co.*, 605 F. Supp. 2d 473, 481 (S.D.N.Y. 2009) (citation omitted).

Here, the locus of operative facts centers on the Eastern District of New York. The contract at issue concerns the purchase of equipment for a property improvement project taking place in Brooklyn, New York. (Dkt. 20-1 at ¶ 7). Kordun issued the relevant purchase order from its office, also located in the Eastern District of New York, and the purchase order required Plaintiff to perform services in Brooklyn, New York. (*Id.* at ¶ 11).

Plaintiff shipped the equipment to the Eastern District of New York, where Kordun accepted it. (Dkt. 1 at ¶¶ 18-19). Plaintiff concedes that the locus of operative facts is outside the Western District of New York. (Dkt. 28 at 5-6). As noted above, none of the facts forming the basis for the claims in this case have any connection to the Western District of New York. Accordingly, this factor weighs in favor of transfer.

### 6. The Availability of Compulsory Process

"'The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions.'" *Billing v. Commerce One, Inc.*, 186 F. Supp. 2d 375, 378 (S.D.N.Y. 2002) (quoting *Arrow Elecs., Inc. v. Ducommun Inc.*, 724 F. Supp. 264, 266 (S.D.N.Y. 1989)). In its moving papers, Defendants argue that this Court would be unable to compel the attendance of any unwilling witnesses who reside and are employed in the New York City area. (*See* Dkt. 20-4 at 10). Plaintiff argues that "[u]nder Federal Rule of Civil Procedure 45, a district court can enforce a trial subpoena served on a witness within the state or within 100 miles of the Court." (Dkt. 28 at 5).

Rule 45(c) states:

(c) Place of Compliance.
    (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
        (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
        (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
            (i) is a party or a party's officer; or
            (ii) is commanded to attend a trial and would not incur substantial expense.

Plaintiff is not correct that the Court can compel *any* witness within the state of New York. Rather, as outlined in subsection (B), if the person to be compelled is more than 100 miles from the trial, hearing, or deposition, the court may only compel a person residing, employed, or transacting business in New York if they are (1) a *party or a party's officer*, or (2) a witness attending trial who *would not incur substantial expense*. In other words, the Court's power to compel non-party witnesses is limited, because they are outside the 100-mile radius identified in subsection (A). Accordingly, the Eastern District of New York is better situated to compel the attendance of non-party witnesses located in the New York City area, since they would be within a 100-mile radius, which is outside the scope of this Court's geographic reach. The Court notes that presumably any witnesses from the Massachusetts area, where Plaintiff is located, are outside the 100-mile radius of either the Eastern or Western District of New York. But because the Eastern District has greater power to compel the attendance of at least some expected witnesses, this factor weighs in favor of transfer.

### 7.    The Relative Means of the Parties

"In analyzing whether the relative means of the parties favors transfer, a court should determine whether a party's 'financial situation would meaningfully impede its ability to litigate this case in either forum.'" *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, No. 08 Civ. 8106(PGG), 2009 WL 2252116, at *8 (S.D.N.Y. July 28, 2009) (quoting *In re Collins & Aikman Sec. Litig.*, 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006)). "[T]his factor has 'rarely been a dispositive reason to grant or deny a transfer motion' and is not so here." *Schoenefeld v. New York*, No. 08 Civ. 3269 (NRB), 2009 WL

- 17 -

1069159, at *3 (S.D.N.Y. Apr. 16, 2009) (quoting *Thomas Am. Corp. v. Fitzgerald*, No. 94 Civ. 0262(CBM), 1994 WL 440935, at *5 (S.D.N.Y. Aug. 11, 1994)).

Defendants contend that Kordun and Hayes are "similarly-sized companies without appreciable disparity in economic means," and therefore this factor does not weigh against transfer. (Dkt. 20-4 at 13). Plaintiff states that Defendants have not offered any evidence that they do not have the financial means to litigate this action in the Western District of New York, and suggests that it would be more expensive to litigate the case in the Eastern District of New York. (*See* Dkt. 28 at 5 ("the Court is well aware that the costs of litigation in this locale is far less expensive than in New York City")). Plaintiff notes that this factor has rarely been held to be dispositive. (*Id*.). The Court finds that the relative means of the parties is neutral.

### 8.   Forum's Familiarity with the Governing Law

The breach of contract and related claims involved in this case involve the application of New York law. Both the Western and Eastern District of New York have familiarity with New York law principles, and therefore this factor is neutral in the analysis.

### 9.   Considerations of Trial Efficiency and the Interests of Justice

"The interests of justice are based on the totality of the circumstances." *TM Claims Serv. v. KLM Royal Dutch Airlines*, 143 F. Supp. 2d 402, 407 (S.D.N.Y. 2001) (quotations and citation omitted). This factor "relates primarily to issues of judicial economy." *Royal & Sunalliance*, 167 F. Supp. 2d at 578 (quotations and citation omitted). "Although certainly not decisive, docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor for the Court to consider and is accorded 'some

- 18 -

weight.'"  *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 991 (E.D.N.Y. 1991) (citation omitted).  Indeed, this District's civil docket is considered one of the busiest in the nation.  *See generally Vorobey v. Cleveland Bros. Equip. Co.*, No. 17-CV-1115V(SR), 2018 WL 1640571, at *2 (W.D.N.Y. Apr. 5, 2018) (stating that "defendants note that the Western District of New York has one of the most congested civil dockets in the nation," and finding that transference to the Middle District of Pennsylvania is appropriate because it "is in a superior position to provide the parties with a swift resolution").  On the other hand, the Eastern District of New York is also a heavily congested court, and therefore the Court finds that this factor is neutral in the analysis.

After considering all the factors discussed above, the Court concludes that, on balance, they favor transferring this case to the Eastern District of New York.  While some of the factors are neutral (for example, the location of documents, means of the parties, forum's familiarity with governing law, and considerations of trial efficiency), several others weigh in favor of transferring the action.  The Court particularly notes that the material events surrounding how the contract was to be performed are centered in Brooklyn, New York, and many of the witnesses that could provide relevant testimony regarding the issues in this case are located there.  In contrast, this case has no connection to the Western District of New York.  None of the factors—not even the Plaintiff's choice of forum—weighs in favor of retaining jurisdiction.  *See, e.g., Guardian Life Ins. Co. of Am. v. Coe*, 724 F. Supp. 3d 206, 217 (S.D.N.Y. 2024) (granting motion to transfer where none of the factors weighed against transfer, and the location of witnesses strongly favored transfer).

The Court has also considered that the case is in its early stages and therefore transfer of the case would not create any meaningful delay in the proceedings. Finally, Plaintiff has failed to identify any reason beyond the fact that it chose the forum as to why the case should remain in the Western District of New York. And as explained above, under the circumstances, Plaintiff's choice of forum is entitled to little weight. *See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 408 (S.D.N.Y. 2005) (granting motion to transfer venue to the Eastern District of Pennsylvania; explaining that "[b]ecause the locus of operative facts in the instant action lies outside of the Southern District of New York and neither plaintiff resides there, plaintiffs do not merit the Court's presumption in favor of their choice of New York as the forum for this litigation," "[t]he fact that the locus of operative facts likely lies in Pennsylvania weighs strongly in favor of transfer," and further noting that the plaintiff failed to explain why the Southern District of New York was the appropriate venue).

Defendants have established that transfer is appropriate by clear and convincing evidence, including because transfer of the case to the Eastern District of New York would be more convenient for the parties and witnesses, and would serve the interests of justice. Accordingly, Defendants' motion to transfer venue (Dkt. 20) is granted.

## II.     Plaintiff's Cross-Motion for Summary Judgment (Dkt. 22)

Given the Court has concluded that venue should be transferred to the Eastern District of New York, the Court defers ruling on Plaintiff's cross-motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Defendants' motion to transfer venue (Dkt. 20) is granted. The Clerk of Court is directed to transfer this matter to the United States District Court for the Eastern District of New York.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:    July 31, 2026
          Rochester, New York

- 21 -